**In re Elmer Daniel SPERRY, Debtor.**

**Andrea A. RUFF, Trustee, Plaintiff,**

**v.**

**LAKE ABSTRACT & GUARANTY CO., Paul Grigsby, Elmer Daniel Sperry, Individually and as Trustee, and Vaughn Realty Corporation, Defendants.**

**Bankruptcy No. 84–672–BKC–6P7.
Adv. No. 86–74.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 15, 1989.

John A. Baldwin, Fern Park, Fla., for defendants Paul Grigsby and Elmer Daniel Sperry.

Stephen H. Judson, Leesburg, Fla., for defendant Lake Abstract.

Leigh Meininger, trustee, Orlando, Fla., for defendant Lake Abstract.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO THE COMPLAINT OF ANDREA A. RUFF, TRUSTEE

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the trustee's complaint seeking a declaratory judgment concerning her rights, title and interest in real property and to avoid a fraudulent transfer pursuant to 11 U.S.C. § 544(b). In response, defendants Lake Abstract & Guaranty Co., Paul Grigsby, Elmer Daniel Sperry, and Vaughn Realty Corporation seek a determination of their interest in this property. Additionally, Leigh Meininger, the bankruptcy trustee for defendant Lake Abstract & Guaranty Co. ("Lake Abstract") has filed a crossclaim against Paul Grigsby to void an unrecorded mortgage pursuant to 11 U.S.C. § 544(a). The crossclaim is the subject of a separate opinion. 101 B.R. 767.

A trial of this adversary proceeding was held on March 19, 1987, September 3, 1987, October 13, 1988 and March 2, 1989, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The debtor, Elmer Daniel Sperry, Sr., filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 24, 1984. 11 U.S.C. § 701 et seq. Andrea A. Ruff was appointed as trustee.

2. The trustee seeks a declaratory judgment as to her interest in four acres of real property located in Lake County, Florida, which the debtor is currently leasing for residential purposes (the "Airport Property"). The trustee claims that despite the lack of legal title, the property belongs to the bankruptcy estate.

3. The Airport Property is located at 5503 South Highway 441, in Leesburg, Florida, and is legally described as:

> Lot 7 in Silver Lake Estates Edition A, a subdivision in Lake County, Florida, according to the plat thereof recorded in Plat Book 5, Public Records of Lake County, Florida, LESS the right-of-way of U.S. Highway 441 in Lake County, Florida.

4. Debtor denies that he has ever possessed any legal interest in the Airport Property, despite having been in continuous possession of the property for 10 years.

5. The facts which underlie this dispute show that the debtor found the Airport Property and desired to purchase it for himself. However, due to the fact that he had over 50 judgments recorded against him, he was unable to obtain necessary financing. Consequently, Debtor asked his second cousin, Gene Smith ("Smith"), to acquire the property in his stead.

6. On August 16, 1978 Gene Smith and his wife, Brenda, purchased the Airport Property for $210,000.00, obtaining 100% financing through Barnett Bank. An MAI appraisal showed the land to be worth $264,000.00 at that time.

7. Prior to that purchase date, Debtor conducted a business (Sperry Auto Sales) on property titled in his name. After the Smiths took title to the Airport Property, Debtor conveyed all of his interest in his land to Gene Smith and moved to the Airport Property. The value of the transferred property was approximately $100,000.00.

8. Gene Smith and the Debtor never entered into a formal lease agreement.

However, according to the terms of the alleged lease, the rent charged to Debtor was equal the mortgage payments due Barnett Bank. Of the few checks written by Sperry Equipment Company, some went directly to Barnett Bank inscribed with the words "Airport Payment" instead of "rent" as other checks for rental items were written.

9. Debtor was often in default in payment of his rent, making only 70–80% of the required payments. Nevertheless, Gene Smith did not file eviction proceedings.

10. Notwithstanding the purported purpose of acquiring the land as a long-term investment, Smith transferred title to the Airport Property on June 22, 1983, to William Burleigh ("Burleigh"), another life-long friend of the Debtor. The consideration for the transfer was an assumption of the mortgage (Approximate balance = $138,000.00) and a payment of $14,000.00 in back taxes. No mention was made of Debtor's $100,000.00 "equity" in the property (See Paragraph 6 above).

11. There was an understanding between Smith and Burleigh permitting the Debtor to remain on the property despite his inability to pay rent.

12. On June 22, 1983, the property was deeded to Lake Abstract & Guaranty Company, a company controlled by Burleigh.

13. Burleigh continued to allow the Debtor to occupy the property, and again there was no written lease. At most, only one or two rent payments were ever tendered and those checks were returned for insufficient funds. The rent that Burleigh was supposedly charging Debtor was the same amount as the mortgage payment, $2,700.00 per month.

14. Burleigh has twenty years of experience as an employee, stockholder and officer of a real property title abstract company. In this capacity and as a close personal friend of the Debtor, he had personal knowledge of the many judgment liens against the Debtor at the same time title to the Airport Property was transferred from Smith to Lake Abstract.

15. Because the Debtor failed to make regular payments and Burleigh and Lake Abstract were in deep financial trouble, it became necessary to again transfer the property. Burleigh admitted that the primary concern was that the new title holder be a friend of Sperry.

16. Burleigh subsequently transferred the land to Paul Grigsby ("Grigsby"), another friend of the Debtor, for approximately $280,000.00.

17. At trial an agreement was introduced into evidence supporting the proposition that the debtor had a contingent interest in certain funds should Grigsby sell the Airport Property. The letter of agreement dated October 9, 1985, reads:

> An agreement between William E. Burleigh and Paul R. Grigsby regarding the sale of Silver Lake Estate, Lot 7, Blk, 39– less Hwy. 441, ORE 780 P5–574. When said sale is consummated William E. Burleigh will submit an accounting of monies owed him by Elmer Sperry. After these two billings are deducted and any other expenses brought on by the sale, the balance, if any, will be disbursed to Elmer Sperry. In the event the above property is not sold within 12 months from Nov. 1, 1985, I, Paul R. Grigsby will reimburse William E. Burleigh for whatever monies owed him at that time.

### CONCLUSIONS OF LAW

The fundamental question in this adversary proceeding is the trustee's interest in the Airport Property. The trustee suggests that the nature of the transactions and the relationship of the parties support the imposition of a constructive trust on the Airport Property for the benefit of the estate. Alternatively, the trustee seeks to void the fraudulent transfer of the property pursuant to 11 U.S.C. § 544(b).

Section 544(b) provides:

> (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502(c) of this title.

Thus, the trustee must establish that an interest of the debtor was transferred with the intention of defrauding creditors. The applicable state statute dealing with this issue is § 726.01, Florida Statutes (1987), providing that every transfer made with the intent to hinder, delay or defraud creditors is void.[1]

It is well settled Florida law that where property is purchased by a debtor and title is taken in the name of another to avoid creditors, the deed may be set aside as a fraudulent conveyance by all existing and subsequent creditors. *Scott v. Sites*, 41 So.2d 444 (1949); *Knowles v. Magic City Grocery, Inc.*, 144 Fla. 78, 197 So. 843 (1940); *Fleming v. Otis Elevator Co.*, 107 Fla. 557, 145 So. 201 (1933); *First State Bank v. Fitch*, 105 Fla. 435, 141 So. 299 (1932); *Hummell v. Harrington*, 92 Fla. 87, 109 So. 320 (1926).

A fraudulent conveyance is defined as a transaction through which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or that operates to the prejudice of their legal or equitable rights, or a conveyance that operates to the prejudice of the legal or equitable rights of other persons. 37 Am.Jur.2d, *Fraudulent Conveyances* § 1. A purchase by one not a creditor is fraudulent and void as against creditors, even though the purchaser has paid an adequate consideration, where the seller has at the time a purpose or intent of defrauding his creditors, or of hindering and delaying them in the collection of their debts, and the purchaser knows of this purpose, or has knowledge of such facts or circumstances as would induce an ordinarily prudent person to make inquiry which would lead to the discovery of the purpose.

In this case, the evidence clearly shows that the Airport Property was purchased by the defendants exclusively for the benefit of the debtor with the sole intention of placing this asset beyond the reach of his creditors. Smith, Burleigh,

and Grigsby were willing participants in the scheme and had actual knowledge of his intentions.

Despite the defendants' assertions to the contrary, the Smiths did not lose money on the transfer to Burleigh nor did Burleigh, acting through Lake Abstract, realize a $150,000.00 profit when he sold the property to Grigsby. Instead, the parties conveniently omitted the debtor's "equity" in the property (i.e. the transfer of land worth $100,000.00 to Gene Smith) when they calculated these figures for trial. When one considers the effect of Debtor's "equity" on these calculations, it is obvious that there was little or no consideration for the transfers.

The Court finds further that despite the various transfers, the debtor always retained exclusive control over the property and the manner in which it was disposed. He was never threatened with eviction even though he was often in default under the alleged lease. The letter agreement of October 9, 1985, further demonstrates the knowledge of Burleigh and Grigsby of Debtor's interest. It shows that once the delinquent mortgage payments and other expenses were paid, the balance was to be distributed to the Debtor. The Court concludes, therefore, that the transfers of the property between Smith, Burleigh, Lake Abstract and Grigsby should be declared void as fraudulent conveyances.

Because the debtor never possessed actual legal title, the Court must now determine if this property can be brought into the estate through imposition of a constructive trust. A constructive trust arises entirely by operation of law, without reference to any actual or proposed intention of creating a trust. It is based on the premise that one who acquires property by fraud, misrepresentation, or other circumstance rendering it inequitable for him to retain it, is in equity regarded as a trustee for the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property. *See, In re McDonald,*

---

1. In the case of *In re Warner*, 83 B.R. 807 (Bankr.M.D.Fla.1988), the Court determined that the recently enacted Florida Uniform Fraudulent Transfer Act, Florida Statutes § 726.01 *et seq.*, did not have application to transfers which occurred before January 1, 1988. The Court stands by that determination. *Contra, In re Gherman*, 103 B.R. 326 (Bankr.S. D.Fla.1989).

16 B.R. 618 (Bankr.S.D.Fla.1981) (constructive trust imposed upon vehicle transferred to brother to avoid creditors). *See also, Doing v. Riley*, 176 F.2d 449 (5th Cir.1949); *Wadlington v. Edwards*, 92 So.2d 629 (Fla. 1957).

In the instant case, Paul Grigsby is currently the title holder to the Airport Property. Due to his close relationship with the debtor, the amount of control Sperry exerted over the property, and his acknowledgement of the October 9, 1985 letter, the Court finds him to be a willing participant in the scheme to defraud creditors. If he were allowed to keep the property, he would profit by this wrong and would be unjustly enriched at the expense of Sperry's creditors. Under the circumstances, the Court finds that (i) Grigsby holds title to the property in trust for Sperry's estate, and (ii) that the trustee may avoid his interest in the Airport Property pursuant to § 544(b).

The defendants contend that, even if the Court adopted these findings, the trustee's action is barred by the applicable statute of limitations. The Court does not agree. A trust which is created by operation of law falls outside the statute of limitations and is instead governed by the doctrine of laches. *Williams v. Grogan*, 100 So.2d 407 (Fla.1958); *Wadlington v. Edwards*, 92 So.2d 629 (Fla. 1957). Although the original transaction between Sperry and Gene Smith took place six years prior to the filing of the bankruptcy petition, the secret manner in which it was accomplished made it extremely difficult for creditors to uncover. Under the circumstances, the Court finds that the trustee's action is not barred by the doctrine of laches and the trustee may bring this action to set aside the transfer to Grigsby as a fraudulent conveyance.

The Court will enter a separate Final Judgment in accordance with these findings.

### FINAL JUDGMENT ON COMPLAINT FILED BY ANDREA A. RUFF, TRUSTEE

Upon Findings of Fact and Conclusions of Law separately entered, it is ORDERED as follows:

1. Final Judgment is entered in favor of the plaintiff, Andrea A. Ruff, Trustee, and against the defendants, Lake Abstract & Guaranty Co., Paul Grigsby, Elmer Daniel Sperry, Individually and as Trustee, and Vaughn Realty Corporation.

2. Defendants Lake Abstract & Guaranty Co., Paul Grigsby, Elmer Daniel Sperry, Individually and as Trustee, and Vaughn Realty Corporation, are divested of any interest in the property located at 5503 South Highway 441, Leesburg, Florida, 32748, and more legally described as:

> Lot 7 in Silver Lake Estates Addition A, a subdivision in Lake County, Florida, according to the plat thereof recorded in Plat Book 5, Public Records of Lake County, Florida, LESS the right-of-way of U.S. Highway No. 441 in Lake County, Florida.

3. Defendant Paul Grigsby's interest in this property is void pursuant to 11 U.S.C. § 544(b).

4. The real property described above is property of the estate as defined by 11 U.S.C. § 541 and may be disposed of by the trustee in accordance with law.

DONE AND ORDERED.